IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID CRAWLEY,                          )
                                        )
                    Plaintiff,          )
                                        )
            v.                          )      Civil Action No. 20-306
                                        )
VIACOM CBS INC., KDKA-TV,               )
and WPCW-TV,                            )
                                        )
                    Defendants.         )

## MEMORANDUM OPINION

Presently before the Court is Defendants' Motion for Summary Judgment and brief in support (Docket Nos. 36, 37) filed by ViacomCBS Inc. ("CBS"), KDKA-TV ("KDKA"), and WPCW-TV ("WPCW") (collectively, "Defendants") in this matter, Plaintiff David Crawley's brief in opposition thereto (Docket No. 41), and Defendants' reply (Docket No. 43). In addition to the motion and briefs, the Court has considered the parties' concise statements and counter statements of material facts as well as the appendices filed in connection with the briefs. The Court heard oral argument on the motion on May 24, 2022. (Docket No. 50 (Transcript of Proceedings ("Tr."))).

For the reasons set forth herein, Defendants' Motion for Summary Judgment is granted.

## I.    Factual Background[1]

As the parties are well-acquainted with the factual background of this case, at this juncture the Court will present an abbreviated version of the facts relevant to the motion for summary judgment. Plaintiff, who is 73 years old, began his employment with KDKA as a

---

[1]    The relevant facts are derived from the undisputed evidence of record, and the disputed evidence of record is read in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

reporter in 1988.  (Docket No. 29, ¶¶ 15, 19; Docket No. 38, ¶ 1;).  KDKA and WPCW are TV stations that are owned and operated by CBS.  (Docket No. 29, ¶ 9; Docket No. 38, ¶ 3).

In August 2017, KDKA provided news coverage of the 2017 Three Rivers Regatta, including the "Flugtag," which is an event sponsored by Red Bull wherein participants "take flight" in a contraption off of a pier and land in the river.  (Docket No. 29, ¶¶ 30-34; Docket No. 38, ¶ 19).  Plaintiff, who was assigned to cover the Flugtag event as a reporter, participated in the event on August 4, 2017, and returned to his regular work duties the following workday.  (Docket No. 38, ¶¶ 22, 26).  Seventeen days later, on August 21, 2017, Plaintiff collapsed while covering another story.  (Docket No. 29, ¶ 52; Docket No. 38, ¶ 27).

Since August 21, 2017, Plaintiff has been unable to return to work as a reporter, nor has he requested to return to work as a reporter.  (Docket No. 29, ¶ 55; Docket No. 38, ¶ 15).  Plaintiff has also not applied for any positions or held any employment with any other person or entity other than KDKA since August 21, 2017.  (Docket No. 38, ¶ 17).  Plaintiff had an individual employment agreement (the "contract") with KDKA that expired in July 2018 and was not renewed.  (*Id.* ¶ 6).  Plaintiff's KDKA email account was also deleted during the time that he was off work.  (*Id.* ¶ 16).  Plaintiff has not been mentioned on-air at KDKA since August 21, 2017.  (Docket No. 29, ¶ 55).  Additionally, Plaintiff was not included in any of KDKA's three 70th Anniversary segments, each lasting between approximately 6 ½ minutes and 8 ½ minutes, which were shown during the station's newscasts on three nights in January 2019 and were also made available online.  (*Id.* ¶¶ 66-68).

Shortly after his collapse on August 21, 2017, Plaintiff filed a claim for workers' compensation benefits, alleging that he had sustained injuries as a result of the Flugtag event.  (Docket No. 38, ¶ 28).  On May 29, 2018, Plaintiff dual-filed a charge of age discrimination with

the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Rights Commission ("PHRC"), and he amended that charge in June 2018.  (Docket No. 29, ¶ 6; Docket No. 40, ¶ 97).  In Summer 2019, Plaintiff filed another charge of discrimination, this time alleging retaliation for filing his charge, based on the fact that he was not included in KDKA's anniversary segments.  (Docket No. 38, ¶ 59).  The EEOC issued Right to Sue Notifications to Plaintiff on December 4, 2019.  (Docket No. 29, ¶ 6).

Plaintiff timely filed his Civil Complaint on March 2, 2020 (Docket No. 1), and Defendants filed a Motion to Strike and Partial Motion to Dismiss Plaintiff's Complaint on June 29, 2020 (Docket No. 4).  On September 22, 2020, the case was reassigned to this judicial officer.  (Docket No. 22).  On October 15, 2020, the Court heard oral argument on Defendants' motions.  (Docket No. 25).  The next day, the Court issued an Order indicating that Defendant's Motion to Strike was granted in part and denied in part, Defendants' Partial Motion to Dismiss was denied as moot, and Plaintiff was given leave to amend his Complaint.  (Docket No. 28).

On November 12, 2020, Plaintiff filed an Amended Civil Complaint, alleging violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S. § 951 *et seq.*, and workers' compensation retaliation under Pennsylvania law.  (Docket No. 29 ("Amended Complaint")).  Specifically, the Amended Complaint contains five Counts: (I) Age Discrimination under the ADEA; (II) Age Discrimination under the PHRA; (III) Retaliation under the ADEA; (IV) Retaliation under the PHRA; and (V) Workers' Compensation Retaliation under Pennsylvania common law.  Defendants filed their Motion for Summary Judgment, which has been fully briefed by the parties, and oral argument has been held.  The motion is now ripe for decision.

II.    <u>**Standard of Review**</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The parties must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). A disputed fact is material if it might affect the outcome under the substantive law. *See Boyle v. Cnty. of Allegheny, Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Anderson*, 477 U.S. at 247-48). Summary judgment is unwarranted where there is a genuine dispute about a material fact, that is, one where a reasonable jury, based on the evidence presented, could return a verdict for the non-moving party with regard to that issue. *See Anderson*, 477 U.S. at 248.

When deciding a motion for summary judgment, the Court must draw all inferences in a light most favorable to the non-moving party without weighing the evidence or questioning the witnesses' credibility. *See Boyle*, 139 F.3d at 393. The movant has the burden of demonstrating the absence of a genuine issue of material fact, while the non-movant must establish the existence of each element for which it bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant has pointed to sufficient evidence of record to demonstrate that no genuine issues of fact remain, the burden is on the non-movant to search the

record and detail the material controverting the movant's position.  *See Schulz v. Celotex Corp.*, 942 F.2d 204, 210 (3d Cir. 1991).  Rule 56 requires the non-moving party to go beyond the pleadings and show, through the evidence of record, that there is a genuine issue for trial.  *See Celotex v. Catrett*, 477 U.S. at 324.

### III.     Discussion

#### A.  Counts I and II:  Age Discrimination Claims Under the ADEA and the PHRA

In Count I of his Amended Complaint, Plaintiff alleges age discrimination in violation of the ADEA, and in Count II Plaintiff alleges age discrimination in violation of the PHRA.[2] Plaintiff avers that Defendants engaged in age discrimination against him by not renewing his contract, by giving him less desirable reporting assignments, and by engaging in various other adverse employment actions such as deleting his work email account.  Defendants contend that Plaintiff cannot establish a *prima facie* case of discrimination based on any of these allegations because he cannot show that he has suffered material adverse employment actions, nor can he point to facts showing that he was treated differently because of his age.  Defendants further argue that even if Plaintiff could establish a *prima facie* case of age discrimination based on any of these allegations, Defendants have articulated legitimate, nondiscriminatory reasons for all of their actions.  Plaintiff opposes Defendants' motion, arguing that he has established a *prima facie* case of discrimination based on the allegations in his Amended Complaint, and that Defendants' stated reasons for their actions are each pretext for engaging in age discrimination against him. Defendants contend in response that Plaintiff cannot point to evidence showing that Defendants' articulated reasons are a pretext for age discrimination.

---

[2]     The Court need not differentiate between Plaintiff's age discrimination claims under the ADEA and the PHRA because the same analysis is used for each claim.  *See Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n.4 (3d Cir. 1998).  Therefore, Counts I and II will be addressed together, and Counts III and IV will be addressed together, herein.

### 1.  Overview of Age Discrimination under the ADEA

The ADEA prohibits an employer from discharging an individual, or otherwise discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment, because of that individual's age.  *See* 29 U.S.C. § 623(a)(1).  In order to succeed on a claim of age discrimination, a plaintiff must demonstrate that age "was the 'but-for' cause of the employer's adverse decision," or that it "'actually played a role in [the employer's decision-making] process *and had a determinative influence on the outcome*.'"  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993) (emphasis added)).  A plaintiff may establish a triable claim of employment discrimination by presenting either direct evidence of discriminatory motive or circumstantial evidence.  *See Maxfield v. Sinclair Int'l*, 766 F.2d 788, 791 (3d Cir. 1985).

Here, Plaintiff has not provided direct evidence of age discrimination (nor does Plaintiff contend that he has done so), so the Court's analysis of the circumstantial evidence presented is governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (reaffirming the use of the *McDonnell Douglas* analysis in ADEA cases that involve indirect evidence). Generally, to establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must prove the following elements: (1) he is 40 years of age or older; (2) he suffered an adverse employment action; (3) he was qualified for the position at issue; and (4) he was treated less favorably than a sufficiently younger person under circumstances that give rise to an inference of age discrimination.  *See Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108 (3d Cir. 1997) (citing *Sempier v. Johnson & Higgins,* 45 F.3d 724, 728 (3d Cir.1995)); *McGinnis v. Donahoe*, No. 2:12-cv-01880-JFC, 2015 WL 507043, at *7 (W.D. Pa. Feb. 6, 2015).  "In order to satisfy

the fourth element, a plaintiff must show that similarly situated younger employees were treated more favorably than he." *McGinnis*, 2015 WL 507043, at *7 (citing *Sarullo v. U.S. Postal Serv.,* 352 F.3d 789, 798 (3d Cir. 2003)).   It is the plaintiff who bears the initial burden of establishing a *prima facie* case of discrimination.  *See Keller*, 130 F.3d at 1108.  In order to establish a *prima facie* case at the summary judgment stage, "the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] *prima facie* case." *Duffy v. Magic Paper Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001) (internal citations and quotation marks omitted).

If a plaintiff succeeds in establishing a *prima facie* case of age discrimination, the burden of production then shifts to the employer to offer a legitimate, nondiscriminatory reason for taking the adverse employment action at issue.  *See Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 n.5 (3d Cir. 1998).  Notably, the employer's burden at this stage is "relatively light" and is satisfied if the employer provides evidence "which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)); *see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012) (describing this step in the burden-shifting analysis as a "minimal burden").

If the employer offers a legitimate, nondiscriminatory reason for taking an adverse employment action, the burden shifts back to the plaintiff to show that that reason was pretext for age discrimination.  *See Simpson*, 142 F.3d at 644 n.5.  An employee may demonstrate that his employer's legitimate, nondiscriminatory reason is pretextual by submitting evidence that allows a factfinder to either: 1) disbelieve the employer's articulated legitimate reason; or 2) believe that

discrimination was more likely than not a "but for" cause of the adverse employment action. *See Abels v. Dish Network Serv., LLC*, 507 F. App'x 179, 183 (3d Cir. 2012) (citing *Fuentes*, 32 F.3d at 764).

Evidence that is offered to undermine an employer's proffered legitimate reasons must be sufficient to "support an inference that the employer did not act for its stated reasons." *Sempier v. Johnson & Higgin*s, 45 F.3d 724, 731 (3d Cir. 1995). *Fuentes* recognized two ways in which a plaintiff can demonstrate that the employer's legitimate, nondiscriminatory reasons was pretextual. *Fuentes*, 32 F.3d at 762; *see also Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644-45 (3d Cir. 2015). The first way to show pretext under *Fuentes* is for a plaintiff to adduce evidence that would allow a factfinder to disbelieve the employer's reason for the adverse employment action. *Fuentes*, 32 F.3d at 765. To establish such disbelief, the evidence "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765. Instead, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered reasons "that a reasonable factfinder *could* rationally find them unworthy of credence," and thus infer that the employer did not, in fact, act for the nondiscriminatory reasons that have been articulated. *Id.* (emphasis in original) (internal citations and quotation marks omitted). Alternatively, a second way a plaintiff can show pretext under *Fuentes* is by presenting "evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that age was a motivating or determinative factor in the employment decision." *Simpson*, 142 F.3d at 644-45; *see also Gross*, 557 U.S. at 177-78 (applying "but-for" causation in ADEA cases). Such pretext can be shown with evidence that:

(1) the employer has previously discriminated against the plaintiff; (2) the employer has discriminated against others within the plaintiff's protected class; or (3) the employer has treated more favorably similarly situated employees not within the plaintiff's protected class. *Simpson*, 142 F.3d at 645.

### 2.   <u>Alleged Age Discrimination: Failure to Renew Plaintiff's Contract</u>

Defendants first argue that they are entitled to summary judgment because, to the extent that Plaintiff claims that Defendants engaged in age discrimination by failing to renew his contract, Plaintiff has not established that he suffered an adverse employment action based on Defendants' actions.   "'[A]n adverse employment action is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Fiorentini v. William Penn Sch. Dist.*, 665 F. App'x 229, 234 (3d Cir. 2016) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)) (internal citation and quotation marks omitted). Actions have generally "not been found to constitute adverse employment actions in the absence of evidence that there has been a *material change* in an employee's working conditions."   *Id.* (emphasis added) (citing various cases).

Plaintiff asserts that he "was subjected to the most severe adverse employment action" in that "his employment was terminated when KDKA did not renew his employment agreement." (Docket No. 41 at 8).   Defendants argue, however, that the failure to renew Plaintiff's contract was not a *material* adverse action because that non-renewal did not actually terminate his employment.   Rather, Defendants maintain that Plaintiff's employment was never terminated, but rather that he "remained employed by KDKA following the expiration of his employment agreement, and remains employed today."   (Docket No. 37 at 13).

Upon consideration of the arguments presented in the parties' briefs and at oral argument, the Court finds that this issue – whether Defendants' failure to renew Plaintiff's contract terminated his employment – constitutes a disputed material fact for purposes of Defendants' summary judgment motion.  Therefore, drawing all inferences in a light most favorable to Plaintiff, the Court will assume for purposes of summary judgment that the non-renewal of Plaintiff's contract did in fact operate to terminate his employment, and that Plaintiff has adduced evidence sufficient to prove that he suffered an adverse employment action, thereby establishing the second element of his *prima facie* case.

Nevertheless, where Plaintiff runs into trouble, to the extent that his discrimination claim is based on the non-renewal of his contract, is in showing the fourth element of his *prima facie* case where he must point to some evidence giving rise to an inference that he was the victim of unlawful age discrimination through such non-renewal.  *See Fiorentini*, 665 F. App'x at 235.  To do so, Plaintiff must show that a similarly situated younger individual was treated more favorably than he was.  *See McGinnis*, 2015 WL 507043, at *7.  Plaintiff himself indicates that Defendants admitted to allowing Plaintiff's contract "to expire without doing anything" because he "was on a medical leave without a specified return to work date."  (Docket No. 41 at 9).  Plaintiff does not, however, provide any evidence of similarly situated younger employees (or "comparators"), who were treated more favorably than he was with regard to contract renewal.[3]  *See, e.g., Fiorentini*, 665 F. App'x at 235-36 (noting that the plaintiff needed to point to the

---

[3]    Notably, although Defendants indicated during oral argument that a number of their employees' contracts expired at the same time that Plaintiff's contract expired, Plaintiff has not sought to provide the Court with evidence showing that any of those employees were younger and were treated more favorably than he was.  (Tr. at 37). Additionally, although Plaintiff argues that a certain individual, Craig Setzer, is a suitable comparator who was treated more favorably than he was, the Court notes that Mr. Setzer was a meteorologist at a CBS-owned station in Miami, Florida who came back to work after an accident, while Plaintiff was a features reporter at KDKA in Pittsburgh, Pennsylvania who remained out on leave after an accident, and Plaintiff has failed to show how Mr. Setzer's treatment could create an inference that Plaintiff was the victim of age discrimination here.  (Docket No. 40, 48-50).

treatment of other similarly situated individuals to support the fourth element of her *prima facie* case).  Therefore, the Court finds that Plaintiff has not established a *prima facie* case of age discrimination based on the non-renewal of his contract.

Even giving Plaintiff the benefit of the doubt and assuming without deciding that Plaintiff has established the *prima facie* elements of age discrimination based on Defendants' failure to renew his contract, Plaintiff has failed to meet his burden at the next stage of the *McDonnell Douglas* analysis in that he has not shown that the reason Defendants provided for such non-renewal was pretext for age discrimination.  As explained, *supra*, if a plaintiff establishes the *prima facie* elements of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action.  *See Simpson*, 142 F.3d at 644 n.5.  As Plaintiff states in his brief, "KDKA has admitted that it simply allowed Crawley's employment agreement to expire without doing anything, and without even considering renewal of the contract, *because Crawley was on a medical leave without a specified return to work date*." (Docket No. 41 at 9 (emphasis added) (citing Docket No. 38, ¶¶ 6-9)).  Plaintiff admits that he was and is unable to return to work as a reporter.  (Docket No. 38, ¶ 15; Docket No. 40, ¶ 15).  Based on this evidence, the Court finds that Defendants have articulated a legitimate, nondiscriminatory reason for not renewing Plaintiff's contract.

Since Defendants have met their relatively light burden of offering a legitimate, nondiscriminatory reason for their action, the burden shifts back to Plaintiff to show that Defendants' proffered reason for not renewing his contract was pretext for age discrimination.  Under *Fuentes*, to defeat summary judgment at this point in the analysis, Plaintiff must point to some evidence from which a factfinder could reasonably either: (1) disbelieve Defendants'

articulated reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Defendants' action.  *See* 32 F.3d at 764.

Plaintiff has presented no evidence demonstrating "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendants' stated reason that would show that reason to be "unworthy of credence."  *Fuentes*, 32 F.3d at 765.  In fact, Plaintiff argues that Defendants have provided *no reason* for their failure to renew Plaintiff's employment agreement (Docket No. 41 at 25), even though such reason – that Plaintiff was out on medical leave with no return-to-work date – is clearly stated in Plaintiff's own brief (Docket No. 41 at 9). Nevertheless, although Plaintiff asserts that Defendants have provided *no* reason for failing to renew his contract, Plaintiff also argues that Defendants' proffered reason for non-renewal should be disbelieved because – despite Defendants' position that Plaintiff was not actually terminated – the failure to renew Plaintiff's contract operated to terminate that contract. However, the Court has acknowledged that this assertion – that non-renewal of Plaintiff's contract terminated his employment – constitutes a disputed fact that the Court is assuming to be true for summary judgment purposes.  Plaintiff's argument noting the parties' factual dispute does not demonstrate in any way that Defendants' proffered reason for such non-renewal – that Plaintiff's contract was not renewed because he was injured and unable to work – was pretext for age discrimination.  The Court therefore finds that Plaintiff has presented no evidence rendering Defendants' articulated reason for its actions implausible or unworthy of credence, and that he has thus failed to establish pretext under the first *Fuentes* approach.

Alternatively, as explained, *supra*, Plaintiff can show pretext under the second *Fuentes* approach by proffering evidence that: (1) Defendants previously discriminated against him; (2) Defendants have discriminated against others within his protected class; or (3) Defendants

have treated more favorably similarly situated employees not within his protected class. *See Simpson*, 142 F.3d at 645. Plaintiff has also not shown pretext in any of these ways, however. He has presented no evidence to show that Defendant previously discriminated against him, nor does he attempt to make such an argument. (Docket No. 41 at 27-28). Further, the Court disagrees with Plaintiff's assertion that he has presented evidence to show that Defendants have discriminated against other older reporters or that Defendants treated younger employees, who he cites as comparators, more favorably.

With regard to Plaintiff's assertion that he has shown that Defendants have discriminated against others within his protected class because he "has produced evidence that CBS and its owned-and-operated stations have discriminated against other reporters," the Court disagrees. (Docket No. 41 at 27). Although Plaintiff has named various individuals who he claims were subjected to age discrimination at some point in time, the record is devoid of evidence to establish them as relevant comparators here. Plaintiff has failed to adduce sufficient relevant evidence about them or their purportedly discriminatory circumstances, and they simply are too attenuated from Plaintiff's situation to draw any reasonable inferences with respect to Defendants' motives in not renewing Plaintiff's contract. *See, e.g., Waris v. HCR Manor Care*, No. 07-3344, 2009 WL 330990, at *17 (E.D. Pa. Feb. 10, 2009) (holding that, in making his case, plaintiff could not rely on unrelated discrimination cases that were brought in a different state, brought by a different plaintiff, brought against a different defendant, or involving different decision makers).

To the extent that Plaintiff also identified one employee of KDKA who he says experienced age discrimination, the Court notes that Plaintiff has failed to provide sufficient evidence to support such allegation, since he has supplied only unsubstantiated statements in his

deposition that that individual settled a claim of age discrimination with KDKA at some point, and that Plaintiff had had a limited discussion with that employee several years ago in which she said that she received poor treatment after she turned 40.  (Docket No. 40-2 at 12).  Therefore, the Court finds that Plaintiff has not provided evidence that Defendants discriminated against others within Plaintiff's protected class such that "a factfinder could conclude by a preponderance of the evidence that age was a motivating or determinative factor in the employment decision" at issue here.  *Simpson*, 142 F.3d at 644-45.

The Court also disagrees with Plaintiff's contention that Defendants treated similarly situated employees who are not within his protected class (i.e., similarly situated younger employees) more favorably than they treated him.  Instead, the evidence that Plaintiff cites to support this argument is nearly entirely his own deposition testimony, which is not only insufficient to support his statements because it is based only on his subjective opinions, but it is also lacking in detail that would show such allegedly preferential treatment.  *See, e.g., Sterner v. Siemens Med. Sols. USA, Inc.*, No. 14-6662, 2016 WL 9651482, at *10 (E.D. Pa. Aug. 16, 2016) (explaining that the plaintiff's "own subjective beliefs and naked assertions cannot help her meet her burden under the third stage of the *McDonnell Douglas* framework").

 Specifically, Plaintiff contends that he "has adduced evidence that Crawley, Koeppen, Highfield, Arbogast, and the younger morning news report[er]s were all news reporters," citing as support his own statement of facts, which in turn cites as support his own deposition testimony discussing those individuals.  (Docket No. 41 at 27; Docket No. 40, ¶ 86; Docket No. 40-2 at 29-30).  Plaintiff also contends that "the evidence shows that the younger reporters were receiving preferential treatment," citing again as support his own statement of facts, which again cites nearly entirely to his own deposition testimony as support.  (Docket No. 41 at 28; Docket

No. 40, ¶¶ 2, 66, 67, 69, 70, 86; Docket No. 40-2).  Plaintiff's own mere beliefs in this regard cannot satisfy his burden to show pretext.

The Court also finds that Plaintiff has provided no evidence to show that Ms. Koeppen, Mr. Highfield and Ms. Arbogast are proper comparators – similarly situated younger employees – nor has Plaintiff provided evidence to show that such individuals were in fact receiving preferential treatment.  As to whether these individuals are proper comparators, Plaintiff admits that Ms. Koeppen was a news anchor and Mr. Highfield was a night reporter, while Plaintiff's employment contract refers to him as a "staff reporter" and he refers to himself as a "feature reporter" (and Plaintiff does not point to any evidence indicating Sarah Arbogast's job title). (Docket No. 38, ¶ 45; Docket No. 40, ¶ 45; Docket No. 41 at 28; Docket No. 40-2 at 11). Plaintiff also admittedly does not know the ages of Ms. Koeppen or Mr. Highfield, nor does he provide any of the ages of any other "younger reporters."  (Docket No. 40-2 at 29-30).

Instead, Plaintiff asserts in his statement of facts that Defendants "claim[] that younger reporters and anchors such as Susan Koeppen and David Highfield were not comparators of Crawley, yet they were the reporters being assigned stories that were previously assigned to Crawley."  (Docket No. 40, ¶ 69).  Plaintiff appears to mistakenly assume that, by asserting that certain individuals were given assignments that he believes he should have been given, those individuals are therefore relevant comparators for purposes of analyzing his age discrimination claim.  However, to be proper comparators here, the individuals cited must be similarly situated younger employees.  *See Simpson*, 142 F.3d at 645.  "While 'similarly situated' does not mean identically situated, the plaintiff must nevertheless be similar in 'all relevant respects.'" *Obsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 222-23 (3d Cir. 2009) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)).  Thus, a determination of whether employees are

similarly situated includes consideration of factors such as the employees' job responsibilities, their supervisors, and any decision-makers involved in their employment. *See Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011). As Plaintiff has failed to show that he held the same, or a similar, job position as the employees that he cites as comparators, and since he has provided no other evidence to show that such employees are otherwise similarly situated, Plaintiff has simply failed to point to any evidence showing that the individuals he cites as similarly situated younger employees are in fact proper comparators.

Furthermore, even if the Court assumes without deciding that the individuals cited by Plaintiff are proper comparators, Plaintiff has failed to provide any evidence in support of his contention that these individuals received preferential treatment with regard to renewal of their contracts. In fact, Plaintiff has shown no evidence regarding the renewal or non-renewal of other employees' contracts, even though Defendants have indicated that they did not renew the vast majority of their employees' contracts that expired the same day that Plaintiff's contract expired.[4] (Tr. at 18, 37).

Instead, Plaintiff argues that his purported comparators received preferential treatment by being given more desirable reporting assignments than he was given. However, "[i]n determining whether similarly situated nonmembers of a protected class were treated more favorably than a member of the protected class, the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action." *Simpson*, 142 F.3d at 647 (citing *Ezold v. Wolf, Block, Schorr & Solis-Cohn,* 983 F.2d 509, 528 (3d Cir. 1992)). Thus, a plaintiff's positive job performance in another category is not relevant, nor is a

---

[4] Plaintiff's counsel also conceded at oral argument that evidence was not adduced regarding other employees who had a similar contract that was renewed, and that that issue was not explored during discovery. (Tr. at 37). Notably, Defendants indicated that a large number of employees did not have their contracts renewed at the same time that Plaintiff's contract was not renewed. (Tr. at 18).

plaintiff's opinion as to importance of the employer's stated criterion.  *See id.*  "Rather, the plaintiff must point to evidence from which a factfinder could reasonably infer that the plaintiff satisfied the criterion identified by the employer or that the employer did not actually rely upon the stated criterion."  *Id.* (citing *Fuentes,* 32 F.3d at 767).  Since Defendants have indicated that Plaintiff's contract was not renewed because he was out on medical leave without a specified return to work date, Plaintiff would have needed to adduce evidence to show that younger similarly situated individuals were treated more favorably than he was with regard to renewal of their contracts.  Plaintiff has failed to do so.

Therefore, the Court finds that Plaintiff has failed to show the fourth element of a *prima facie* case of age discrimination based on Defendants' non-renewal of his contract, and that, even if the Court assumes without deciding that he did establish all *prima facie* elements for purposes of its analysis, Plaintiff has not shown that Defendants' proffered reason for not renewing his contract is pretext for age discrimination.  Accordingly, the Court finds that – to the extent that Plaintiff relies on Defendants' failure to renew his contract to establish age discrimination – Plaintiff's claims under the ADEA and the PHRA fail as a matter of law and Defendants are entitled to summary judgment on those claims.

### 3.  Alleged Age Discrimination:  Less Desirable Reporting Assignments

Defendants also argue that they are entitled to summary judgment because, to the extent that Plaintiff bases his age discrimination claim on Defendants giving him less desirable reporting assignments, he has failed to establish a *prima facie* case.  According to Defendants, Plaintiff has failed to establish the second and fourth elements of a *prima facie* case based on the desirability of his reporting assignments because he merely points to general observations as to the quality of the assignments given based on his personal impressions alone, and because he has

not identified any specific instances where more desirable assignments were given to younger similarly situated individuals instead of to him.

Upon consideration of the evidence presented by the parties, the Court agrees.  As to whether Plaintiff has shown that he suffered a material adverse employment action by being given less desirable assignments, Plaintiff provides no evidence to support such assertion other than his own beliefs.  During his deposition, Plaintiff admitted simply that "in [his] view" he received assignments on lesser topics.  (Docket No. 40-2 at 28).  At the summary judgment stage, however, Plaintiff cannot base his argument on pure speculation, unsupported by any evidence beyond his own beliefs.  *See Dowling v. Citizens Bank*, No. 2:05cv914, 2007 WL 2752178, at *2, *9 (W.D. Pa. Sept. 19, 2007) (a party may not present allegations as facts without setting forth specific evidence supporting the details of the allegations); *see also Morris v. USW Local 4889*, No. 08-3398, 2009 WL 933807, at *9 (E.D. Pa. Mar. 16, 2010) (in which the plaintiff failed to establish a *prima facie* case because he gave only general deposition testimony but could not recall any specific instances in which others were not disciplined for behavior that was similar to his).  Additionally, as discussed regarding the employees identified as comparators in connection with the non-renewal of his contract, *supra*, Plaintiff has not shown that the individuals he cited as receiving more desirable assignments, Ms. Koeppen and Mr. Highfield (Docket No. 41 at 9-10), are proper comparators for purposes of establishing a *prima facie* case of discrimination based on reporting assignments.

Moreover, even if the Court assumes without deciding that Plaintiff has proffered relevant and properly supported comparators, and that he has based his claim of receiving less desirable reporting assignments on more than just his own opinions – thus establishing a *prima facie* case – Defendants have explained that they make story coverage decisions for business

reasons, including targeting certain demographics, deeming other stories to be more important, and the availability of reporters to cover them.  (Docket No. 37 at 17-18; Docket No. 38, ¶ 43; Docket No. 39-8 at 3).  Upon consideration of the evidence of record, the Court finds that Defendants have met their relatively light burden of providing legitimate, nondiscriminatory reasons for their actions in connection with their assignment and story selection process.

In attempting to show that Defendants' proffered reasons are pretext, however, Plaintiff has failed to provide evidence in support of his contention that his comparators received preferential treatment because they were given more desirable assignments than he was.  Plaintiff argues that he has shown pretext by citing evidence of preferential treatment with his statement that stories that he "used to do were automatically given to younger reporters, specifically Susan Koeppen, David Highfield, Sarah Arbogast, and Amy Wadas," and that he "was also given shorter stories to cover while younger reporters were assigned the longer stories."  (Docket No 40, ¶ 67).  Here again, Plaintiff relies upon his own generalized opinions but he was unable to provide, at his deposition or elsewhere, evidence of *specific assignments* that demonstrated his contention that demonstrably better assignments were given to younger, similarly situated reporters.[5]  (Docket No. 40-2).

_____

[5]    During oral argument and in his brief in opposition to Defendants' summary judgment motion, Plaintiff's counsel also asserts that Plaintiff was assigned to the Flugtag event because of his age, and that KDKA did not want young morning anchors to cover that event because they could get hurt (an allegation that is not included in the Amended Complaint).  (Tr. at 26; Docket No. 41 at 10).  Defendants argue that there is no affirmative evidence to support such contention, and that an email from Acting News Director Cathy Noschese, that Plaintiff cites as being supportive of that assertion, is misconstrued by Plaintiff.  (Docket No. 41 at 10 (citing Docket No. 40, ¶ 20; Docket No. 40-12 at 5).  Defendants argue that they, on the other hand, have provided record evidence clarifying that email, the deposition testimony of Senior Assignment Editor Dicky Nassar, who explained that the statement in that email regarding "something going wrong on live television" referred to concerns about technical or video issues during a live event on the morning news, *not* to a safety issue.  (Docket No. 43 at 14 (citing Docket No. 40-10 at 5)).  The Court notes that Plaintiff has not shown evidence to refute Defendants' explanation of that email and that, in fact, Plaintiff himself testified during his deposition that he did not express concerns about the assignment and never thought KDKA would assign him to do something that was dangerous.  (Docket No. 38, ¶¶ 24-25; Docket No. 40, ¶¶ 24-25).  The Court therefore finds that there is no disputed material fact as to whether Plaintiff's assignment to the Flugtag event constitutes an example of age discrimination.

Without being shown particular examples of Plaintiff receiving less desirable assignments than his cited comparators, and since Plaintiff cites only to his subjective opinion to prove the desirability of the assignments given, the Court has not been presented with evidence demonstrating that Defendants' proffered reasons for its actions are pretext for age discrimination. *See, e.g., Sterner v. Siemens Med. Sols. USA, Inc.*, No. 14-6662, 2016 WL 9651482, at *10 (E.D. Pa. Aug. 16, 2016) (finding no showing of pretext where evidence was based only on the plaintiff's subjective belief); *Robinson v. Matthews Int'l Corp.*, Civ. Action No. 06-1504, 2009 WL 735876, at *14-15 (W.D. Pa. Mar. 20, 2009) (stating that unsubstantiated beliefs are insufficient to support an inference of pretext).  Because Plaintiff has not provided evidence of specific examples of a more desirable assignment being given to a younger similarly situated employee instead of to him, nor has he provided non-subjective evidence to show that the assignments he received were less desirable than those given to younger employees, the Court finds that, even if it assumes without deciding that Plaintiff has identified proper comparators, Plaintiff has still not shown that such individuals received preferential treatment in the assignment process for purposes of its analysis here.[6]  Plaintiff has therefore failed to satisfy the second prong of *Fuentes* in order to show that Defendants' stated reasons for Plaintiff receiving the assignments that he did through their assignment process were pretext for engaging in age discrimination.

To the extent that Plaintiff contends that his ideas for certain stories were rejected by Defendants because of his age – an argument that is related to, or part of, his claim regarding the desirability of his assignments – the Court also finds that Plaintiff has failed to show that such

---

[6]     The only other evidence cited by Plaintiff to satisfy *Fuentes* is that the younger reporters have not had their work email accounts deleted.  Defendants, however, have provided evidence to show that this was a policy based on Plaintiff being out on leave, which is addressed separately, *infra*, because Plaintiff also cites the deletion of his email account as another adverse employment action.

decisions by Defendants constitute instances of age discrimination.   For example, Plaintiff contends that his idea for a feature involving the Enola Gay pilot was rejected because of his age,[7] and that his idea to do a feature on Pittsburgh rapper Mac Miller was rejected because of his age.[8]  (Docket No. 38, ¶ 42; Docket No. 40, ¶ 65).  Even if the Court were to assume without deciding that Plaintiff has established a *prima facie* age discrimination case based on such allegations, Defendants have explained that they frequently rejected story ideas, no matter who pitched them, for a number of business reasons including targeting certain demographics, deeming other stories to be more important, and the availability of reporters to cover stories. (Docket No. 38, ¶ 43 (citing deposition testimony of various individuals)).   Based on this evidence, the Court finds that Defendants have articulated legitimate nondiscriminatory reasons for rejecting Plaintiff's story ideas.   Plaintiff, in response, however, has failed to provide evidence to show that Defendants' proffered reasons for rejecting his story ideas are merely pretext for age discrimination.

Therefore, the Court finds that Plaintiff has failed to establish the second and fourth elements of a *prima facie* case of age discrimination based on receiving less desirable reporting assignments – that he suffered an adverse employment action through receiving less desirable assignments and that younger employees were treated more favorably than he was in the

---

[7]     Plaintiff represents in his Statement of Facts that Ms. Noschese told him "that he was not hip enough to cover youth oriented or edgy topics any longer," citing for support his own deposition testimony.  (Docket No. 40, ¶ 64).  However, Plaintiff's deposition testimony indicates that, in response to his story idea, soon after the pilot of the Enola Gay had died, proposing that Plaintiff interview the pilot's son who lives locally (which would also follow up on a story he had previously done on the pilot), Ms. Noschese responded, "Let's get something more hip." (Docket No. 40-2 at 8).  The Court notes that such testimony does not support Plaintiff's contention that she told him that *he* was not "hip," but rather that *the story* was not a "hip" enough idea.

[8]     Plaintiff's Complaint alleges that Plaintiff was told in response to his idea of doing a Mac Miller feature, "No offense, Dave, but this is not a story for you."  (Docket No. 29, ¶ 24).  However, in his Statement of Facts and at his deposition, Plaintiff indicates only that News Director Anne Linaberger rejected his proposed story about Mac Miller, but he does not indicate that Ms. Linaberger made such comment.  (Docket No. 40, ¶ 65; Docket No. 40-2 at 9).  In any event, the Court notes that Plaintiff does not contend that such a general comment is direct evidence of age discrimination, nor does the Court find that such a general comment shows that Defendants' proffered reasons for rejecting Plaintiff's story ideas were actually pretext for age discrimination.

assignment process – and that, even if the Court assumes without deciding that Plaintiff has established a *prima facie case* based on such claim, he has not shown that Defendants' proffered reasons for their actions are pretext. Accordingly, the Court finds that, to the extent that Plaintiff relies on the desirability of his reporting assignments to show age discrimination, Plaintiff's claims under the ADEA and PHRA fail as a matter of law, and Defendants are entitled to summary judgment on those claims. Similarly, even if the Court assumes without deciding that Plaintiff has established a *prima facie* case of age discrimination based on his story ideas being rejected, Plaintiff has not shown that Defendants' proffered reasons for rejecting his stories are pretext. Accordingly, the Court finds that, to the extent that Plaintiff relies on rejection of his story ideas to establish age discrimination, Plaintiff's claims under the ADEA and PHRA fail as a matter of law and Defendants are entitled to summary judgment on those claims.

### 4. Alleged Age Discrimination: Actions Related to Plaintiff's Email Account, Social Media Accounts, and Exclusion from Work-Related Social Events

Additionally, Defendants argue that they are entitled to summary judgment to the extent that Plaintiff bases his claims that Defendants engaged in age discrimination on an assortment of other adverse employment actions (all actions that Defendants claim are related to Plaintiff's medical leave). Such additional actions include Defendants deleting Plaintiff's work email account, preventing him from accessing his social media accounts, and excluding him from work-related social events.[9]

---

[9] Plaintiff also appears to argue, tentatively, that Defendants' requirement that Plaintiff provide them with a medical release from a doctor before they would permit him to return to work also constituted an adverse employment action. Defendants point out that such requirement cannot be retaliatory because it is a requirement of every employer when an employee goes out on leave and, quite simply, shows no inference of discriminatory intent. (Tr. at 42.) Because Plaintiff does not pursue this argument further, the Court will not address it either.

With regard to the deletion of Plaintiff's work email account, Defendants argue that, even if the Court were to assume that Plaintiff has established a *prima facie* case of age discrimination based on that claim, Defendants have articulated a legitimate, nondiscriminatory reason for Plaintiff's email account being deleted.  Defendants point out that Plaintiff was on an extended leave of absence and had not been working for years when his work email account was deleted, and they contend that the deletion of Plaintiff's account occurred pursuant to a standard policy in which employee accounts expire after a prolonged period of inactivity.  (Docket No. 38, ¶ 16 (citing Docket No. 39-3 at 3 (Defendants' Answer to Interrogatory No. 3))).  Plaintiff claims that Defendants' proffered reason for the deletion of his email account is pretext for age discrimination, citing his statement of material facts which cites the deposition testimony of various individuals who indicated that they knew of no such policy.  (Docket No. 41 at 22 (citing Docket No. 40, ¶¶ 16, 91 (referring to various deposition transcripts)).  However, as Defendants point out, Plaintiff's choice to depose individuals who were unfamiliar with the email policy at issue does not makes their testimony regarding the subject relevant to showing pretext, particularly since Defendants' interrogatory responses – answered by individuals who *were* familiar with such policy – provide clear evidence that Plaintiff's email access was removed pursuant to a standard policy rather than due to a discriminatory motive.  (Docket No. 39-3 at 3-4).

Upon consideration of the evidence presented, the Court finds that Defendants have articulated a legitimate, nondiscriminatory reason for Plaintiff's email account being deleted, and the Court agrees with Defendants that Plaintiff has failed to come forth with sufficient evidence to meet his burden of showing that Defendants' proffered reason is pretext for age discrimination.  Plaintiff has neither submitted evidence that allows the Court to (1) disbelieve

Defendants' articulated legitimate, nondiscriminatory reason, nor has Plaintiff provided evidence that allows the Court to (2) believe that discrimination was more likely than not a "but for" cause for Defendants' deletion.  *See Fuentes*, 32 F.3d at 764.

First, Plaintiff has not come forth with evidence demonstrating weaknesses, implausibilities, or inconsistencies with Defendants' articulated reason for deleting his email account, such that the Court could rationally find it unworthy of credence.  *See id.* at 765.  Citing to deposition testimony of individuals who are unfamiliar with a policy does not show that such policy does not exist, particularly when Defendants *have* produced evidence of such a policy. Second, Plaintiff has not presented evidence with sufficient probative force to prove that age was a motivating or determining factor in the decision to delete his email account.  *See Simpson*, 142 F.3d at 644-45.  Specifically, Plaintiff has neither shown that Defendants previously discriminated against him or others within his protected class, nor has Plaintiff shown that Defendants have treated more favorably similarly situated younger employees.  *See id.* at 645. Moreover, Plaintiff has provided no evidence at all regarding Defendants' handling of the email accounts of other employees.  Therefore, upon the evidence presented, the Court finds that Plaintiff has not met his burden of showing that the reason provided by Defendants for deleting Plaintiff's email account – that he was on an extended leave of absence and had not worked for years, and that such deletion was simply made pursuant to a standard policy for such situations involving long inactive accounts – is pretext for age discrimination.

Relatedly, Plaintiff also asserts, without providing clear detail or evidentiary substantiation, that Defendants discriminated against him based on his age by denying him access to work-related social media accounts.  Even if the Court assumes without deciding that Plaintiff has established a *prima facie* case of age discrimination based on such loss of social

media account access, the Court must determine whether Defendants have articulated legitimate, nondiscriminatory reasons for any actions they took in that regard, and if so, whether Plaintiff has shown that those reasons are merely pretext.  The Court notes that, according to Plaintiff's deposition testimony, his inability to access work-related social media accounts (Facebook and Twitter) as well as his personal Facebook account, appears to be linked at least in part to the deletion of his work email account, an action for which Defendants have provided a legitimate, nondiscriminatory reason, as discussed, *supra*.[10]  (Docket No. 40-2 at 21-22).  Additionally, Defendants stated in response to Plaintiff's interrogatory asking for Plaintiff's social media passwords that they did not and do not maintain any social media accounts related to Plaintiff.[11] (Docket No. 39-3 at 10).  Based on this evidence, the Court finds that Defendants have met the light burden of articulating legitimate, nondiscriminatory reasons for their actions related to Plaintiff's loss of access to work-related social medial accounts.

As with his response to Defendants' proffered reason for deleting his email account, Plaintiff points to no evidence to establish that Defendants' articulated legitimate, nondiscriminatory reasons for any actions they took in connection with Plaintiff's loss of social media account access are pretext for age discrimination.  Here again, Plaintiff has provided no evidence to show that Defendants' reasons for their actions related to Plaintiff's lack of social media account access (that long inactive employee email accounts were deleted as a matter of policy, and that Defendants never maintained social media accounts on behalf of Plaintiff) are implausible, nor has Plaintiff offered any evidence regarding Defendants' past discrimination

---

[10]     For example, Plaintiff explained that an email regarding a PIN change for his personal Facebook account went to his work email address, which no longer exists, so he has not been able to access that account.  (Docket No. 40-2 at 22).

[11]     Plaintiff conceded during his deposition that he never had a personal Twitter account and only accessed Twitter through KDKA, and that he also had a KDKA (or possibly CBS) Facebook account.  (Docket No. 40-2 at 22).

against him or others, or evidence as to Defendants' handling of other, similarly situated employees' social medial accounts.

Therefore, even if the Court assumes without deciding that Plaintiff has established a *prima facie* case of age discrimination based on his loss of work-related social media account access, Plaintiff has not shown that Defendants' proffered reasons for their actions related to any such loss of access are pretext for age discrimination.  Accordingly, to the extent that Plaintiff bases his age discrimination claims on his loss of work-related social media account access, his ADEA and PHRA claims fail as a matter of law, and Defendants are entitled to summary judgment on those claims.

Additionally, Plaintiff claims that Defendants engaged in age discrimination by excluding him from work-related social events, actions which also appear to be at least partially related to the deletion of his work email account.  With regard to these allegations, too, Plaintiff has provided very little evidence to establish a *prima facie* case.  In fact, in his deposition testimony, Plaintiff could point to only one event, a party outside the KDKA station in a tent where people said goodbye to certain employees who were "buy-outs," as an example of such an event to which he was not invited.  (Docket No. 40-2 at 22-23).

Nevertheless, even if the Court assumes without deciding that Plaintiff has established a *prima facie* case of age discrimination based on being excluded from work-related social events, Defendants have indicated in response to interrogatories that if Plaintiff was excluded from any such events, it was because he was on a medical leave of absence.  (Docket No. 39-3 at 8).  Based on such evidence, the Court finds that Defendants have offered a legitimate, nondiscriminatory reason for not including Plaintiff in work-related social events during the time that he was on leave.  In considering whether Plaintiff has shown such reason to be pretext for

age discrimination, the Court notes that Plaintiff has provided no evidence to show that Defendant's articulated reason is implausible, nor has he provided evidence of past discrimination against himself or others, nor has he pointed to evidence of similarly situated younger employees being treated more favorably than he was with regard to inclusion in work-related social events. In fact, Plaintiff admitted during his deposition that he did not know if there were other employees who were on a medical leave who were invited to social gatherings by Defendants. (Docket No. 40-2 at 22-23). Thus, as with Plaintiff's claims based on his email account and work-related social media accounts, Plaintiff has failed to show, with regard to invitations to work-related social events, that similarly situated younger employees were treated more favorably than he was. *See Fiorentini*, 665 F. App'x at 234-35; *McGinnis*, 2015 WL 507043, at *7. Thus, Plaintiff has failed to show that the legitimate, nondiscriminatory reason offered by Defendants for their actions in connection with Plaintiff's exclusion from work-related social events was pretext for age discrimination.

Therefore, even if the Court assumes without deciding that Plaintiff has established a *prima facie* case of age discrimination based on Defendants excluding him from work-related social events, Plaintiff has failed to show that the legitimate, nondiscriminatory reason offered by Defendants for their actions is merely pretext for age discrimination. Accordingly, to the extent that Plaintiff bases his age discrimination claims on his exclusion from work-related social events, his claims under the ADEA and PHRA fail as a matter of law, and Defendants are entitled to summary judgment on those claims.

### B.  Counts III and IV:  Retaliation Claim Under the ADEA and the PHRA

In Count III of his Amended Complaint, Plaintiff alleges retaliation in violation of the ADEA, and in Count IV Plaintiff alleges retaliation in violation of the PHRA.  Plaintiff argues

that Defendants retaliated against him for filing his charge with the EEOC and the PHRA. (Docket No. 29, ¶¶ 108-18).  Specifically, Plaintiff avers that Defendants' retaliatory actions involved, in essence, erasing him from public view by omitting specific reference to him in their 70th Anniversary segments, not mentioning him on-air since his medical leave began, and refusing to renew his contract.  (Docket No. 38, ¶ 60; Docket No. 40, ¶ 82).

In order to establish a *prima facie* case of retaliation under the ADEA, a plaintiff must show that (1) he engaged in protected activity, (2) adverse action was taken by the defendant either after or contemporaneous with that protected activity, and (3) a causal connection exists between his protected activity and the defendant's adverse action.  *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (citing *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).  If a plaintiff establishes a *prima facie* case of retaliation, then the Court proceeds under the *McDonnell Douglas* burden-shifting analysis described, *supra*.

Defendants contend that Plaintiff cannot establish a *prima facie* case of retaliation because he has not shown that he suffered a material adverse employment action, nor can he show a causal connection between the filing of his EEOC charges and adverse employment actions by Defendants.  Defendants further assert that, even if Plaintiff could establish a *prima facie* case of retaliation based on this erasure from view, Defendants have articulated legitimate, nondiscriminatory reasons for their actions, and Plaintiff can point to no evidence of pretext.

### 1.  <u>Alleged Retaliation:  Omission from the 70th Anniversary Segments</u>

Plaintiff first claims that Defendants engaged in retaliation against him by making no reference to him in KDKA's 70th Anniversary segments described, *supra*.  Defendants argue that Plaintiff has failed to establish a *prima facie* case of retaliation because he cannot show that such

omission constituted a material adverse employment action, nor can he show that there is any causal connection between that omission and the filing of his EEOC charges.

Similar to a claim of discrimination, an adverse action that forms the basis of a retaliation claim must be "material." *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Stepp v. Fairpoint Comm'ns, Inc.*, Civ. Action No. 06-576, 2007 WL 4248559, at *8 (W.D. Pa. Nov. 30, 2007) (noting that "'[p]etty slights or minor annoyances that often take place at work' are trivial harms and not materially adverse actions for purposes of establishing a retaliation claim" (quoting *Moore v. City of Phila.*, 461 F.3d 331, 346 (3d Cir. 2006)).  Courts in the Third Circuit are reluctant to find that an adverse employment action is adverse absent a showing of harm or injury.  *See Anselmo v. City of Phila.*, Civ. Action No. 18-5160, 2021 WL 308132, at *12 (E.D. Pa. Jan. 29, 2021) (discussing *Morrison v. Carpenter Tech. Corp.*, 193 F. App'x 148, 154 (3d Cir. 2006)).

Here, Defendants argue that omitting Plaintiff from the anniversary segments does not constitute a material adverse employment action.  Defendants further argue that, even if the Court assumes without deciding that omitting Plaintiff from the anniversary segments did constitute a material adverse employment action, Plaintiff has failed to establish a causal link between the filing of his EEOC charge and Defendants' omission of him from those segments.  In fact, Plaintiff filed his first EEOC charge in May 2018 and he amended it the following month.  Plaintiff filed his second charge in Summer 2019.  The anniversary segments at issue were aired in January 2019, more than seven months after the first charge was filed, and long before Plaintiff filed his second charge.  Thus, quite simply, the first charge was filed too early, and the second charge was filed too late, to show a causal connection due to temporal proximity alone.  *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citing a holding that a

three-month lapse of time between the filing of a charge with the EEOC and an adverse employment action is too long to show a causal connection due to temporal proximity).

Absent clear temporal proximity, Plaintiff could also cite to circumstantial evidence of record to show a causal connection between his protected activity and the adverse employment action. *See Tirk v. Dubrook, Inc.*, Civ. Action No. 2:14-889, 2016 WL 427738, *7 (W.D. Pa. Feb. 4, 2016) (explaining that if the temporal proximity in a case is not unusually suggestive, a court may consider whether the record evidence as a whole is sufficient to show an inference of causation). However, Plaintiff has also failed to adduce specific circumstantial evidence to support a causal link between the filing of his EEOC charge and the putative adverse employment actions, including the omission of him from the anniversary segments, noting only that he "has adduced sufficient circumstantial evidence" upon which a causal link could be inferred, and citing to paragraphs in his Amended Complaint and statement of material facts that include the various adverse employment actions that he alleges. (Docket No. 41 at 15 (citing Docket No. 40, ¶¶ 6, 11, 12, 13, 16, 18, 79, 91, 96)). The Court concludes that neither these record citations nor Plaintiff's generalized characterizations taken therefrom generates any inferences to establish the requisite causal link. The Court therefore finds that, because Plaintiff has not shown that a causal connection exists here, the third element of a *prima facie* case, he has not established a *prima facie* case based on such omission.

Moreover, even if the Court assumes without deciding that Plaintiff has established a *prima facie* case of retaliation based on exclusion from the anniversary segments, Defendants assert that the employee who put together the anniversary segments provided a reasonable explanation for overlooking Plaintiff. Specifically, Managing Editor Cory Martin testified during his deposition that he put together the segments in a compressed period of time while also

performing his other job duties, and that he drew clips from two sources in which Plaintiff did not appear when selecting newscasters.  (Docket No. 38, ¶¶ 35, 38 (citing Docket No. 39-7 at 16, 22-23, 25)).  Based upon this evidence, the Court finds that Defendants have met their light burden of articulating a legitimate, nondiscriminatory reason for omitting Plaintiff from the anniversary segments.

In response, Plaintiff must show that Defendants' articulated reason for their action was pretext for retaliation.  Plaintiff argues that he has shown that such explanation for omitting him from the anniversary segments was pretext, citing a statement from Ms. Noschese's deposition that she "'wasn't surprised'" Plaintiff was not included in the anniversary segments "'given the fact that there was . . . legal action being taken against the station.'"  (Docket No. 41 at 1, 14 (citing Docket No. 40, ¶ 96)).  However, the Court notes that, considering her comment in a larger context, Ms. Noschese also stated that she "think[s] that there probably was a discussion about it," but she admitted that she did not "know this for a fact."  (Docket No. 40-11 at 9). Furthermore, Ms. Noschese testified that Mr. Martin never said anything to her about why Plaintiff was not included in the segments, it is undisputed that Mr. Martin had sole discretion for what was included in the segments, and Plaintiff does not have any evidence to show that Mr. Martin knew anything about Plaintiffs' EEOC charges.  (Docket No. 40-11 at 9; Docket No. 38, ¶ 34; Tr. at 15, 33).  The Court thus finds that the evidence Plaintiff offered to show pretext, Ms. Noschese's deposition testimony, is based on speculation and is not supported by other evidence in the record.  Thus, the Court finds that Plaintiff has not shown that Defendants' stated reason for their action – not including Plaintiff in the anniversary segments for the reasons testified to by Mr. Martin – is pretext for retaliation.

Therefore, the Court finds that Plaintiff has not established a *prima facie* case of retaliation based on Defendants omitting him from the anniversary segments. Additionally, even if the Court assumes without deciding that Plaintiff has established a *prima facie* case, he has failed to show that the legitimate, nondiscriminatory reason articulated by Defendants for their action was pretext for retaliation. Accordingly, to the extent that Plaintiff's retaliation claims are based on Defendants omitting him from the anniversary segments, Plaintiff's claims fail as a matter of law and Defendant are entitled to summary judgment on those claims.

### 2. Alleged Retaliation: No Mention of Plaintiff On-Air after his Leave of Absence Began

Plaintiff also argues that Defendants retaliated against him for filing EEOC charges by not mentioning him on-air after he began his medical leave. Although Defendants argue that Plaintiff has failed to establish a *prima facie* case of retaliation based on such action because it is insufficient to rise to the level of a material adverse employment action, even if the Court assumes without deciding that Plaintiff has established a *prima facie* case based on such action (or non-action), Defendants have explained that they simply do not broadcast the medical status of their employees to viewers without such employees' permission. (Docket No. 38, ¶ 30 (citing Docket No. 39-4 at 5-7)). Furthermore, Plaintiff did not request that KDKA announce such information, and he instead specifically instructed KDKA not to disclose his medical status. (Docket No. 38, ¶ 30; Docket No. 39-2 at 94-95). Based on this evidence, the Court finds that Defendants have articulated a legitimate, non-discriminatory reason for their actions. In response, the Court notes that Plaintiff has provided no evidence to show that Defendants' articulated reason for not mentioning Plaintiff or his medical status on-air is implausible or unworthy of credence, nor had Plaintiff adduced evidence to prove that retaliation was a motivating or determining factor in Defendants' decision not to mention him on-air. *See*

*Fuentes*, 32 F.3d at 764-65.   The Court thus finds that Plaintiff has failed to show that Defendants' proffered reason for not mentioning Plaintiff or his medical status on-air was pretext for retaliation.

Therefore, the Court finds that Plaintiff has failed to establish a *prima facie* case of retaliation based on Defendants not mentioning Plaintiff on-air during his medical leave, but that, even if the Court assumes without deciding that Plaintiff has established the *prima facie* elements of retaliation based on such actions, he has failed to show that Defendants' articulated reason for their actions was actually pretext for retaliation.   Accordingly, to the extent that Plaintiff's claims of retaliation are based on Defendants not mentioning Plaintiff or his medical condition on-air after his medical leave began, Plaintiff's claims fail as a matter of law and Defendants are entitled to summary judgment on those claims.

### 3.   Alleged Retaliation:   Failure to Renew Plaintiff's Contract

Finally, Plaintiff claims that Defendants retaliated against him for filing EEOC charges by not renewing his contract.   Defendants argue that, aside from such non-renewal not truly being an adverse employment action (as discussed, *supra*, with regard to his discrimination claim based on the non-renewal of his contract), even assuming for summary judgment purposes that such non-renewal does constitute a material adverse employment action, Defendants have explained that they allowed Plaintiff's contract to expire, rather than renew it, because he was out on medical leave with no definite return to work date.   As explained, *supra*, in connection with Plaintiff's discrimination claim based on non-renewal of his contract, the Court finds that Defendants have articulated a legitimate, nondiscriminatory reason for their action.

Furthermore, Plaintiff has not provided evidence to show that Defendants' proffered reason is pretext, and that such reason should be disbelieved or that a retaliatory motive is more

likely than not the reason for their actions.  As previously discussed, Plaintiff has provided no evidence to show that Defendants' articulated reason for not renewing Plaintiff's contract is implausible or incoherent, nor has Plaintiff pointed to evidence showing that retaliation was a motivating or determining factor in Defendants' decision not to renew Plaintiff's contract.  Moreover, as discussed, *supra*, with regard to Plaintiff's discrimination claim based on non-renewal of his contract, Defendants have provided uncontroverted evidence showing that they did not renew the vast majority of their talent's contracts that expired at the same time as Plaintiff's contract.  (Docket No. 38, ¶ 7 (citing Docket No. 39-3 at 2-3)).  Thus, the Court finds that Plaintiff has failed to point to evidence showing that Defendants' articulated reason for their actions in not renewing his contract was pretext for retaliation.

Therefore, the Court finds that, even assuming without deciding that Plaintiff has established a *prima facie* case of retaliation based on Defendants not renewing Plaintiff's contract, Plaintiff has failed to show that Defendants' articulated reason for such non-renewal was pretext for retaliation.  Accordingly, to the extent that Plaintiff's claims of retaliation are based on Defendants not renewing his contract, Plaintiff's claims fail as a matter of law and Defendants are entitled to summary judgment on those claims.

### C.  Workers' Compensation Retaliation Under Pennsylvania Law

Count V of Plaintiff's Amended Complaint alleges a claim of workers' compensation retaliation under Pennsylvania law.  (Docket No. 29, ¶¶ 119-131).  In the Amended Complaint, Plaintiff asserts that this Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367.  (*Id.* ¶ 5).  "[W]here the claim[s] over which the district court has original jurisdiction [are] dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties

provide an affirmative justification for doing so." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).  As the Court is granting summary judgment in favor of Defendants on the other claims asserted in the Amended Complaint, and because considerations of judicial economy do not provide a justification for exercising jurisdiction over Plaintiff's remaining state law claim nor are there extraordinary circumstances present here that otherwise warrant the exercise of federal jurisdiction, the Court declines to exercise supplemental jurisdiction over Count V.  Accordingly, Count V will be dismissed without prejudice to Plaintiff's ability to file such claim in state court.

## IV.   Conclusion

Based on the foregoing, Defendants' Motion for Summary Judgment is granted. Accordingly, summary judgment is granted in favor of Defendants as to Counts I-IV of Plaintiff's Amended Complaint, and Count V of Plaintiff's Amended Complaint is dismissed without prejudice to Plaintiff's ability to file such claim in state court.

An Order consistent with this Memorandum Opinion follows.

Dated: July 29, 2022                     *s/ W. Scott Hardy*
                                         W. Scott Hardy
                                         United States District Judge

cc/ecf:  All counsel of record